## Staunton.

### WELSH v. EBERSOLE.

#### Absent, *Moncure*, P.

1. In an action of assumpsit to recover of the defendant the amount of a bond executed by N W S to the defendant, transferred to the plaintiff with the defendant's name indorsed thereon in blank, the declaration contained three counts. In the first count the plaintiff declared on the bond as *assigned* to him by the defendant, for value received. The second count alleged that N W S was indebted to the plaintiff in the sum of $1,900, part of the purchase money for a tract of land sold by the plaintiff to said N W S—that N W S preferred to give personal security for the debt rather than a lien on the land and offered the defendant as a *guarantor* who, in consideration of the premises, and the fact that the plaintiff would not reserve such lien, guaranteed the payment of the said debt, which guaranty is evidenced by the bond of said N W S payable to the defendant and indorsed by the defendant to the plaintiff by writing his name in blank on the back of the bond—that the plaintiff obtained judgment on the bond against said N W S, sued out execution thereon which was unavailing, &c. The third count does not vary materially from the second. The defendant filed a general demurrer to the declaration and to each count therein, and the court overruled the demurrer to the declaration and to the first count, and sustained the demurrer to the second and third counts. HELD : That the court erred in sustaining the demurrer to the second and third counts.

2. Assuming, as must be done on a demurrer, the truth of every material averment of the declaration, the arrangement was that the defendant should guaranty the payment of the debt N W S owed the plaintiff, to give effect to which arrangement it was agreed that N W S should execute his bond to the defendant, and the defendant should indorse his name thereon in blank, as *guarantor* of the debt.

3. There is nothing in this transaction which precludes the plaintiff from proving it by parol testimony and recovering upon it when so proved.

4. If the obligee of a valid instrument who indorsed it in blank is conclusively presumed to be an assignor, no such presumption can attach to one who was never the holder of the instrument, to whom it was never delivered as a valid obligation, and whose only connection with it was to indorse his name upon it.

5. For the difference between a guaranty and an assignment, and the rights and obligations resulting therefrom. See the opinion of *Staples,* J, in this case.

This was an action of trespass on the case in assumpsit, brought in the circuit court of Frederick county by George W. Welsh, against J. F. Ebersole, to recover of said Ebersole the sum of $1,900 and interest, the amount specified in a certain bond executed on the 24th day of February, 1869, by N. W. Solenberger to said Ebersole, and passed by the said Solenberger to the said Welsh, with the indorsement thereon, in blank, of said Ebersole's name. The declaration, filed at February rules, 1877, contains three counts. The first count is as follows:

"George W. Welsh complains of J. F. Ebersole, who has been summoned to answer the said plaintiff in an action of trespass on the case in assumpsit, for this—to-wit: That a certain N. W. Solenberger, on the 24th day of February, in the year 1869, in the said county, by his certain writing obligatory, signed with his hand and sealed with his seal, dated the day and year aforesaid, promised to pay on the 24th day of February, 1870, to the said J. F. Ebersole or his order, the sum of nineteen hundred dollars, with legal interest thereon from the 24th day of February, 1869, until paid, for value received; and the said J. F. Ebersole, after the making of the said writing obligatory, and before the sum of money specified therein, or any part thereof, was paid—to-wit: on the said 24th day of February, 1869, in said county, assigned and delivered the said writing obligatory and all his interest therein, for value received to the said plaintiff; and the plaintiff avers that when the said

writing obligatory became due and payable according to its legal tenor and effect, the same not having been paid, or any part thereof, he intended to institute an action at law thereon, but was requested by the said J. F. Ebersole not to bring any suit thereon, but to give longer time for its payment. This request of the said Ebersole, that the plaintiff would further indulge the said Solenberger and forbear to compel payment of the amount due on said writing obligatory, by law, was continued from time to time until the 20th day of October, 1874, and at his (Ebersole's) instance and request, the said plaintiff did forbear to sue the said Solenberger on said writing obligatory until the date last aforesaid; but on the said 20th day of October, 1874, the plaintiff avers that, the sum specified in said writing obligatory being still due and unpaid, he instituted an action of debt thereon to recover said sum against the said N. W. Solenberger in the circuit court of the county aforesaid, in which action the said Solenberger confessed a judgment in the office of the said court for $1,900, with six per cent. per annum interest thereon from February 21, 1870, until paid, and costs—to-wit: $9.62, as by the record and proceedings in that case will more fully appear; and the plaintiff further avers, that upon the said judgment he afterwards—to-wit: on the 20th day of October, 1874—caused to be issued from the office of the said court a writ of *fieri facias*, directed to the sheriff of said county, commanding him to make of the goods and chattels of the said N. W. Solenberger, within this county, he then residing therein, the said sum of $1,900, with interest as aforesaid, and the costs aforesaid, and to have the same at the clerk's office of the said court on the first Monday in January, 1875, to render to the plaintiff; on which writ of *fieri facias* the said sheriff made the following return— to wit: 'An indemifying bond required before levying on the property of N. W. Solenberger, which was not given.

January 11th 1875. J. M. Silver, Sh'ff.' The said J. M. Silver being then and there sheriff of the said county. And the plaintiff further avers, that the said Solenberger was not, when said *fieri facias* issued, nor has he since been, possessed of any property subject to the lien thereof; of all which the said J. F. Ebersole afterwards—to-wit: on the 11th day of January, 1875—at the said county, had notice; by reason whereof he became liable to pay to the plaintiff the sum of money specified in the said writing obligatory, together with lawful interest thereon from the 24th day of February, 1869, and all legal costs attending the prosecution of the said action and the execution sued out to enforce the judgment obtained therein as aforesaid; and being so liable, the said J. F. Ebersole, in consideration thereof, afterwards—to-wit : on the 11th day of January, 1875, in said county—undertook and promised the plaintiff to pay him the same when he should be thereto afterwards requested."

The material averments in the second and third counts are set forth in the opinion of *Staples*, J., and require no further statement.

At the March term, 1877, of said circuit court, the office judgment obtained against the defendant was set aside, and the defendant filed a general demurrer to the plaintiff's declaration, and the plaintiff joined in said demurrer, and the defendant pleaded "non assumpsit"; to which the plaintiff replied generally, and leave was given the defendant to file special pleas within sixty days; and the defendant craved oyer of the writing in the declaration mentioned.

The case was afterwards continued from time to time, and the leave to the defendant to file special pleas extended until the November term, 1879, when the defendant filed a general demurrer to the plaintiff's declaration, and to each count therein, and the plaintiff joined in said demurrer; and the matters of law arising upon said demurrers

Welsh v. Ebersole.

being argued, the court overruled the general demurrer to the declaration and demurrer to the *first* count, and sustained the demurrers to the *second* and *third* counts in the declaration, and gave leave to the plaintiff to amend his declaration. The declaration was not amended.

At the March term, 1880, of said court, neither party desiring a jury, the case was submitted to the court, by consent, to be heard on the issue joined, and the court, after hearing the testimony of witnesses and the argument of counsel, being of opinion that the plaintiff was not entitled to recover, gave judgment for the defendant for his costs against the plaintiff.

From the judgment of the court, sustaining the demurrer of the defendant to the second and third counts of the plaintiff's declaration, a writ of error was awarded by one of the judges of this court.

*Dandridge* and *Pendleton*, for the appellees.

STAPLES, J. The only question arising upon this record is, whether the circuit court properly sustained the demurrer to the second and third counts of the plaintiff's declaration. Before considering this question, it will conduce to a clear comprehension of the case to state substantially the material averments contained in these counts. The second count alleges that N. W. Solenberger was indebted to the plaintiff in the sum of $1,900, part of the purchase money for a tract of land; that Solenberger preferred to give personal security for the payment of the debt rather than a lien on the land, and offered the defendant Ebersole as guarantor, and thereupon the defendant, in consideration of the premises and of the fact that the plaintiff would not reserve such lien, guaranteed the payment of said debt, which guaranty is evidenced by the writing obligatory of Solenberger payable to the defendant and en-

dorsed by the defendant to the plaintiff by writing his name in blank on the back of the bond.

The count further avers that the plaintiff obtained a judgment on the bond against Solenberger, sued out execution thereon which was unavailing, and that no part of the debt has been paid, of all which the defendant had notice.

There are other matters set forth in the count, but these are sufficient for all of the purposes of this case.

The third count does not vary very materially from the second, and need not therefore be further noticed. There is nothing in the record to indicate the grounds upon which the circuit court proceeded in declaring these counts insufficient. The counsel on neither side have favored us with an argument, oral or written. All that we have is a brief petition for the appeal, in which it is suggested the question is, whether it is an incontrovertible conclusion of law, whatever may have been the facts, that when the defendant placed his name on the back of the bond it could only be as assignor. It is probable, therefore, that the circuit court was of opinion that the defendant must be treated as assignor of the bond and not as guarantor, and that parol proof could not be received to show a contract different from that implied from the alleged assignment to the plaintiff.

In the first place, it is important to inquire into the rights and obligations resulting from a guaranty and an assignment. A guaranty is not an absolute undertaking as in case of suretyship, but a conditional one to answer for the debt, default or miscarriage of another. The guaranty of payment of a bond or note is an undertaking, on the part of the guarantor, that he will pay the debt if the principal does not. According to some authorities the gurantor contracts to pay if by the exercise of due diligence the debt cannot be made out of the principal. In every case we

must look to the terms of the guaranty and the circumstances under which it was made to ascertain the character and extent of the undertaking. *Arents* v. *Com.* 18 Gratt. 769.

A guaranty may embrace alike negotiable instruments and common law obligations for the payment of money.

On the other hand, assignments relate only to nonnegotiable securities. The assignor in effect agrees that the assignee shall recover the full amount of the bond from the debtor, and if, after the exercise of due diligence, he is unable to do so, he, the assignor, will make good the amount received by him upon the assignment. *Peay* v. *Morrison, Ex'or*, 10 Gratt. 155. The assignee's right of recourse upon the assignor rests upon the ground that there was a valuable consideration for the assignment. In all cases, however, the actual consideration may be shown, and this constitutes the measure of recovery by the assignee against the assignor, whereas in a case of guaranty the guarantor is liable, whether he has or has not received any consideration. A loss sustained by the other party at the instance or with the consent, express or implied, of the guarantor, is sufficient. Chitty on Contracts, 493.

The effect of endorsing the payee's name upon a negotiable security is perfectly understood in the commercial world.

It is in the nature of a warranty that the maker will pay the note upon presentation at maturity, and if not so paid, he, the endorser, will, upon due and reasonable notice of the dishonor of the note, pay the same to the holder. The term "endorse," therefore, when applied to bills of exchange and other negotiable instruments, imports a transfer of the legal title. But with respect to bonds and other securities not negotiable, the equitable title passes by assignment only. And this court in *Bank of Marietta* v. *Pindall*, 2 Ran. 475, said, as to these common law obligations, endorsement is not equivalent to assignment. As to these

assignments meaning more than endorsement : it means endorsement by one party with intent to assign and an acceptance of that assignment by the other party. That case, however, and the case of *Freeman's Bank* v. *Ruckman,* 16 Gratt. 126, seem to establish fully the doctrine that endorsement of the obligee's name upon the bond accompanying the transfer may be declared on as a common law assignment, and that an averment that the instrument was endorsed and delivered is in effect an averment that it was assigned. Both of these cases were, however, decided upon a demurrer to the declaration. They do not establish that such an endorsement may not be treated as a guaranty if such was the agreement of the parties. In 2 Rob. Practice, 290, 291, the opinion is rather insinuated than expressed, that the implied contract resulting from an assignment or endorsement of a common law obligation cannot be changed by parol evidence into a contract of guaranty. I have not been able to find any decision in this State directly upon this point unless the case of *Hopkins Brother & Co.* v. *Richardson,* 9 Gratt. 485, to be hereafter noticed, be so considered. In other States it would seem that parol evidence is received to show the true nature of the contract resulting from the endorsement. In some of them the endorsement in the absence of proof is treated as a guaranty, in others as imposing the obligation of a surety for the debt. 2 Rob. Prac. 290 ; 2 Parsons on Bills and Notes, 119 ; *Seymour* v. *Van Slyke,* 8 Wend. 403, 421 ; *Josselyn* v. *Ames,* 3 Mass. 274 ; *Gist* v. *Drakely,* 2 Gill. 340 ; Baylies on Sureties and Guarantees, 28. I do not deem it necessary to express an opinion as to the soundness of the view suggested in Rob. Practice. What is there said by the author was with reference to antecedent obligations evidencing a debt due by the obligor to the obligee and transferred by the latter to a third person with the accompanying endorsement. That is not this case. The bond executed by Solenberger to Ebersole, the

defendant, was not at any time a subsisting obligation between them—it was not so designed; Solenberger was not indebted to the defendant to the amount of a dollar, nor was there a transfer by the defendant to the plaintiff. Assuming as we must upon a demurrer, the truth of every material averment of the declaration, the arrangement was that the defendant should guarantee the payment of the debt Solenberger owed the plaintiff; and in order to give effect to that arrangement it was agreed that Solenberger should execute his bond payable to the defendant and the defendant should endorse his name theron in blank as guarantor of the debt.

What is there in this transaction which precludes the plaintiff from proving it by parol testimony and recovering upon it when so proved? If this were a suit upon the bond by the defendant against Solenberger, the latter, I take it, might show that it was never delivered to the defendant as a deed of the obligor. This is, however, not a suit upon the bond, but for a cause of action collateral to the bond. If the obligee of a valid instrument who endorsed it in blank is conclusively presumed to be an assignor, no such presumption can attach to one who was never the holder of the instrument, to whom it was never delivered as a valid obligation and whose only connection with it was to endorse his name upon it. Nothing is perhaps better settled than that a person who is not the payee of a note, but endorses his name thereon in blank, may be treated by the payee as guarantor, promisor or endorser, according to the agreement which may be made out by parol proof of the facts and circumstances which took place at the time of the transaction. Story on Promissory Notes, Lee, 479; *Watson* v. *Hurt*, 6 Gratt. 633; *Orrick* v. *Colston*, 7 Gratt. 189.

Reference has already been made to the case of *Hopkins, Brother & Co.* v. *Richardson*, 9 Gratt. 485. It is very remarkable that neither in the report of the case nor in the opinion

of Judge Lee is it stated whether Richardson, who assigned the bond, was or was not the obligee. He is throughout spoken of as holder and assignor. If Richardson was in fact the obligee, the decision is a complete and conclusive authority in this case. And even if he was not such obligee, I think the reasoning of Judge Lee has a very strong bearing upon the question here. In the course of his reasoning he uses the following language: The distinction between the endorsement of negotiable instruments and common law obligations and other instruments not negotiable, are well established by the authorities. But it certainly cannot be maintained that if the holder of the bond endorse it in blank with intent to assign it, and the assignee succeeds in getting credit on the faith thereof, and the obligee prove insolvent, the assignor will not be liable to the party making the advance because he may have received no value for his assignment from his immediate assignee. In such a case the assignor may be regarded as authorizing his assignee to take up the money or goods on the faith of the bond and of his assignment, and to write over his name an assignment for value received, or as authorizing a guaranty of the payment of the bond, to be written over his name conforming to the true intent and purpose with which it was endorsed on the bond. He then proceeds to say that if such a promise be regarded as an undertaking to answer for the debt of another, and therefore within the statute of frauds, the endorsement of the name of the assignor in blank for the purpose indicated, and which gave authority to write a guaranty, in conformity to the intention with which the endorsement was made, and of which parol testimony is clearly admissible, is a full compliance with the requisitions of the statute on the subject. After referring to various cases, he further declares, "the result of the various authorities would seem to be in relation to a blank endorsement of an instrument not negotiable, that

where it is not part of the original transaction, but subsequently made, then in the absence of controlling proof it is deemed a mere guaranty, and the endorser treated only as guarantor. The true intention of the parties is, however, always the subject of elucidation by proof which may be by parol, and the interpretation to be placed upon the endorsement will be always just such as will carry that intention into effect." It is but just to say, that in this last quoted remark Judge Lee was, perhaps, referring to the irregular endorsement of an instrument not negotiable by some person other than the payee.

It does not matter, for so soon as it is shown that the bond executed by Solenberger was never an effectual instrument in the hands of Ebersole, and was not transferred to the plaintiff by him, it is clear that the latter cannot be treated as assignor; and I take it to be clear in any action against him by the plaintiff he might show the real facts of the transaction, and thus avoid any liability based upon an alleged assignment. It was, however, manifestly intended that the defendant should be liable in some form, and, as was said by Judge Lee, the interpretation to be placed upon the endorsement will be always such as will carry that intention into effect.

In the case of negotiable securities, the endorsement is not a mere transfer, but a new contract embodying all the terms of the instrument, and derives its efficacy from the instrument itself. The legal import of the contract being clear and definite, parol testimony is held to be inadmissible to give a different effect to the endorsement from what the law implies. In the case of a non-negotiable security, however, the endorsement does not pass the legal title. It has no direct legal import. It may mean an assignment where there is a subsisting obligation, or, as in the present case, a guaranty or some other form of undertaking to be established by the evidence. I think, there-

fore, it was competent for the plaintiff to declare upon the endorsement as a guaranty, if such was the understanding.

And it was competent for him before, or at the trial, to write out such guaranty above the signature of the defendant, in conformity with the contract of the parties.

For these reasons, I think the circuit court erred in sustaining the demurrer to the second and third counts. For that error the judgment must be reversed and the cause remanded, with liberty to the defendant to plead to the action.

CHRISTIAN, ANDERSON, and BURKS, J's, concurred in the opinion of *Staples*, J.

JUDGMENT REVERSED.